

FILED
WILLIAMSPORT
DEC - 6 2021
PER_____KLW_____
DEPUTY CLERK

### UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Robert D. Kline<br>2256 Fairview Road<br>McClure, PA 17841<br><br>            Plaintiff pro se<br><br>v.<br><br>Brandon Aumiller & Assoc, Inc.<br>135 Mechanic Street<br>Milroy, PA 17063<br><br>   and<br><br>Brandon Aumiller<br>135 Mechanic Street<br>Milroy, PA 17063<br><br>            Defendants | 4: CV 21-2042<br>Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### Preliminary Statement

1. Plaintiff Robert D. Kline ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., a

federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Brandon Aumiller & Assoc, Inc. and Brandon Aumiller, ("Defendants") provide financial services to include insurance products and have made illegal telemarketing calls through agents, employees or servants to the Plaintiff's telephone, which is prohibited by the TCPA.

3. The Plaintiff's telephone is listed on the National Do-Not-Call registry ("DNC") and the Pennsylvania Do-Not-Call ("PADNC") registry and he never consented to receive such phone calls, which were placed to him for telemarketing purposes, specifically to encourage Plaintiff to purchase various insurance products from Defendants.

## Parties

4. Plaintiff Robert D. Kline is a Pennsylvania resident, and a resident of the Middle District of Pennsylvania. His mailing address is 2256 Fairview Road, McClure, PA 17841.

5. Defendant Brandon Aumiller & Assoc, Inc. is a Pennsylvania corporation located at 135 Mechanic Street, Milroy, PA 17063 with its principal place of business 144 W Market St., Lewistown, PA 17044. The Defendant engages in the telemarketing sale of insurance products and services and contacted the Plaintiff for that purpose.

6. Defendant Brandon Aumiller is the owner and executive officer of

Brandon Aumiller & Assoc., Inc. who is, upon information and belief, responsible for its TCPA compliance and marketing strategies, including calls to make appointments with prospective clients. His mailing address is 135 Mechanic Street, Milroy, PA 17063.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012), 565 US 368 (2012).

8. The Court has supplemental subject matter jurisdiction over the related state law claims, which form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing calls to the Plaintiff are believed to be placed within this District. Venue is also proper under 28 U.S.C. § 1391(b)(1) as all defendants reside within this District.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy

[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). In an effort to protect privacy of affected individuals and control illegal activities in the telemarketing industry, Congress has incentivized the TCPA by providing private rights of action allowing for a statutory fine against defendants.

<u>The TCPA Prohibits Automated Telemarketing Calls as Well as Calls to People Registered on the National Do-Not-Call registry.</u>

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service...or any service for which the called party charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA also makes it unlawful to make telemarketing calls to any called party that is registered on the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(b)(5).

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) and 47 U.S.C. § 227(b)(5). See 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 227(b)(5).

14. The TCPA also makes it unlawful to violate any of its implementing provisions codified in 47 C.F.R. § 64.1200 and provides a private cause of

action to person who receive calls in violation of this subsection. *See* 47 U.S.C. § 227(c)(5).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers, services for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The Growing Problem of Automated Telemarketing</u>

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), <u>https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls</u> [https://archive.is/w2afC] (statement of FCC chairman).

17. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing*

*the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commenstaff-ftc-bureau-consumer-protection-federal-communications-commissionrulesregulations/160616robocallscomment.pdf.

18. In fiscal year 2017, the *FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016*. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do-Not-Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/newsevents/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc [https://archive.is/oPZSW].

19. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging,* N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html [https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them,* Wall St. J. (July 4, 2018, 10:30 PM), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-aboutthem-1530610203 [https://archive.is/V2UYp].

20. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index,* YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

21. According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index,* YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time,* YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

22. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center,* FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

<u>The TCPA Imposes Personal Liability on Those Who Commission Telemarketing Calls</u>

23. Under the TCPA, an individual such as Brandon Aumiller may be personally liable for the acts alleged in this Complaint pursuant to the

Communications Act of 1934, of which the TCPA is a part, which reads, inter alia: "[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user as well as of that person." 47 U.S.C. § 217.

24. The Third Circuit has held that individuals may be personally liable for violations of the TCPA when they had direct, personal participation in or personally authorized the violative conduct. *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 162 (3d Cir. 2018). It is believed that Defendant Brandon Aumiller personally authorized the violative conduct described herein.

## Factual Allegations

25. Defendants own and operate a financial services/insurance type business that provides, inter alia, insurance products and, in the instant matter, it is believed that Medicare advantage and supplement plans are offered as well.

26. To generate business, Defendants rely on indiscriminate telemarketing practices without the use of Neustar list or National Do Not Call Registry List that indicates who has cell phones in the case of the former as well as who is on the National DNC in the case of the latter.

27. One of the telemarketing strategies to enhance business used by Defendants involves having and agent/employee call potential customers, either directly or via third party vendor they retain to make telemarketing calls on their behalf indicating that, inter alia, Defendant Brandon Aumiller or some other person will be in your area on a certain day to discuss updating your file and/or offering for sale Medicare plans.

28. Upon information and belief, despite being a second degree misdemeanor, none of the Defendants is registered to conduct telemarketing in Pennsylvania in direct violation of the Pennsylvania Telemarketer Registration Act. 73 Pa. Cons. Stat. § 2241 (2020).

29. Plaintiff avers that by letter dated November 8, 2021 he made a request via letter of Defendant Brandon Aumiller & Associates, Inc. to obtain a copy the written "Do-Not-Call Policy" as provided for at 47 C.F.R. 64.1200(d)(1) which was sent with proof of mailing. Attached as Exhibit "A" is a copy of said letter.

30. To date Plaintiff has not been provided any written policy and therefore Plaintiff concludes that none exists as required.

31. Plaintiff believes and therefore avers that, since Defendants or their agent did not send Plaintiff a copy of said policy, it is because they do not maintain any and thus their failure to do so is a willful violation of the 47 C.F.R. 64.1200(d)(1) as described herein.

**The Calls to the Plaintiff Kline**

32. Plaintiff Kline is a "person" as defined by 47 U.S.C. § 153(39).

33. Plaintiff's telephone number is (570) 658-XXXX (the "Number").

34. Plaintiff avers that Defendants' calls were not made to Plaintiff for emergency purposes.

35. The Number is on the National Do-Not-Call Registry, as well as the Pennsylvania Do-Not-Call Registry.

36. Sometime prior to November 6, 2021 in the year 2021 Defendants called Plaintiff and, inter alia, let a message in an attempt to set an appointment time which was for the purpose of making a sale of one of their products.

37. Plaintiff received another call from Defendants on November 6, 2021 at approximately 2:59 PM advising that Nathan or Brandon was going to be in the area to discuss plans and products.

38. Plaintiff received yet another call on December 2, 2021 at 7:22 PM from a female who identified herself as Janelle who told Plaintiff that Brandon was going to be in the area to review policies and she offered to set an appointment. The call was from 717-953-9440.

39. Plaintiff was harmed by these calls and thus suffered injury in fact. They deprived him of legitimate use of his phone because the phone line was tied up during the process of the calls and his privacy was improperly invaded. Defendants used up electricity and Plaintiff spent time to go

through messages and erase messages from Defendant without erasing legitimate message which is a tedious process. Plaintiff was injured because, in addition to what has already been explained, the messages identified herein were frustrating, obnoxious, annoying, were a nuisance and disturbed his solitude.

### Defendants' Liability for the Telemarketing Calls

40. It is unclear at this stage whether Defendants initiated the calls at issue themselves, among themselves, or through a third party.

41. If the Defendants initiated the calls themselves, they are directly liable for any TCPA calling violations.

42. If the Defendants initiated the calls among themselves, they are liable for all calls, even though they did not initiate them pursuant to common law agency principles.

43. Even if, however, Defendants used a third party to make all of the illegal telemarketing calls at issue, they are still legally responsible for the calls. Defendant Brandon Aumiller's requests to any agent to make illegal calls to people registered on any DNC and thereby ignore TCPA compliance are ultra vires actions that are not protected by any corporate umbrella he may claim.

44. The Federal Communication Commission ("FCC"), the entity tasked with promulgating rules and orders related to enforcement of the TCPA,

has explained that it's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See *In re Rules & Regulations Implementing the TCPA*, F.C.C. Rec. 12391, 12397 (1995).

45. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

46. If the calls to the Plaintiff were outsourced by Defendants, on May 9, 2013, the FCC confirmed in a Declaratory Ruling holding that sellers such as Defendants may not avoid liability by outsourcing telemarketing, either among themselves or to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re* Dish Network Petition (May 2013 FCC Ruling), 28 F.C.C. Rec. 6574, 6588 (2013) (internal citations omitted).

47. More specifically, the May, 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586.

48. The May, 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592.

49. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if

they are not independently privy to such information." *Id.* at 6592-93. Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

### Defendants Liability for Failing to Provide a Do Not Call Policy

50. Plaintiff avers that 47 U.S.C. § 227(c)(5) provides a private right of action for claims premised on violations of the TCPA implementing regulations promulgated pursuant to 47 U.S.C. §§ 227(c)(1)-(4) as well as the applicable sections of the Code of Federal Regulations that relate to the TCPA.

51. Plaintiff avers that he is entitled to damages under the TCPA since failing to provide a Do-Not-Call policy upon request is certainly the violation described in this count which violates 47 C.F.R. 64.1200(d)(1).

### Legal Claims

### Count One:
### Violation of the TCPA's Prohibition Against Calling Persons on the National Do-Not-Call Registry

52. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

53. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute multiple violations of the 47 U.S.C. § 227(c)(5), by making calls, except for emergency purposes, to Plaintiff's telephone when it is listed on the National Do-Not-Call registry.

54. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c)(5), Plaintiff is entitled to an award of $500 in damages for each and every illegal call made to his phone identified herein to include those that may be additional calls identified in discovery to include ATDS calls, if any.

55. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c)(5), by making calls, except for emergency purposes, to his phone identified herein.

56. Plaintiff believes and therefore avers that the Defendants' violations were negligent and/or knowing as well as willful.

**Count Two:**
**Violation of the Pennsylvania Telemarketer Registration Act**
**73 Pa. Cons. Stat. § 2241**

57. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

58. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute multiple violations of the Pennsylvania Telemarketer Registration Act ("PTRA"), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's numbers, on the Pennsylvania Do-Not-Call registry, without registration.

59. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300.00 in damages for each and every call made to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201 et seq.

60. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA as related to calling Plaintiff for telemarketing purposes in the future.

## Count Three:
## Violation of the TCPA's Implementing Regulations
## Codified at 47 C.F.R. § 64.1200

61. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to provide Plaintiff a copy of Defendants' Do-Not-Call policy.

63. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone numbers in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

64. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

65. The Defendants' violations were negligent and/or knowing as well as willful.

## **Relief Sought**

WHEREFORE, Plaintiff requests the following relief:

A.   Injunctive relief prohibiting Defendants from calling Plaintiff advertising their goods or services when he is listed on the National Do-Not-Call registry and/or in violation of the PTRA, and/or in violation of the TCPA's implementing regulations.

B.   Because of Defendants' violations of the TCPA's Do-Not-Call restrictions, Plaintiff seeks for himself $500.00 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500.00 per violation, pursuant to 47 U.S.C. § 227(c)(3).

C.   Because of Defendants' violations of the PTRA, Plaintiff seeks for himself $300.00 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201- 9.2(a).

D.   Because of Defendants' violations of the TCPA's implementing regulations, Plaintiff seeks for himself $500.00 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500.00 per violation, pursuant to 47 U.S.C. § 227(c)(5).

E.   Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **November 6, 2021**

Robert D. Kline
Plaintiff pro-se
2256 Fairview Road
McClure, PA 17841
570-658-3448
rob@eawireless.net